1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

MARIA G., *on behalf of* E.G.,

9

Plaintiff,

Case No. C22-5706-MLP

10

v.

ORDER

11

COMMISSIONER OF SOCIAL SECURITY,

12

Defendant.

13

## I.    INTRODUCTION

14

Plaintiff seeks review of the denial of her application for Supplemental Security Income

15

("SSI"). Plaintiff contends the administrative law judge ("ALJ") erred by failing to fully develop

16

the record and rejecting a testifying medical expert's opinions.[1] (Dkt. # 15.) As discussed below,

17

the Court AFFIRMS the Commissioner's final decision and DISMISSES the case with prejudice.

18

## II.    BACKGROUND

19

Plaintiff was born in 2009. AR at 805. On May 12, 2015, Plaintiff applied for benefits,

20

alleging disability as of November 1, 2011. *Id.* at 78. Plaintiff's applications were denied initially

21

22

23

---

[1] Although Plaintiff listed additional assignments of error on the first page of her opening brief (dkt. # 15 at 1), she failed to provide any supporting arguments and, in her reply brief, acknowledged that such assignments of error were waived (dkt. # 21 at 1).

ORDER - 1

1   and on reconsideration, and Plaintiff requested a hearing. *Id.* at 77, 85, 123. After the ALJ

2   conducted a hearing on March 26, 2019, the ALJ issued a decision finding Plaintiff not disabled.

3   *Id.* at 17-34, 41-76. After Plaintiff appealed the decision to this Court, the case was remanded for

4   a *de novo* hearing. *Id.* at 953-58.

5          On remand, Plaintiff's application was consolidated with a later application. AR at 961.

6   After the ALJ held a hearing on March 14, 2022, the ALJ issued a decision finding Plaintiff not

7   disabled. *Id.* at 804-818, 831-910. Using the three-step disability evaluation process applicable to

8   claimants under age 18,[2] the ALJ found, in pertinent part, that Plaintiff's severe impairments of

9   type 1 diabetes mellitus and generalized anxiety disorder did not meet or medically equal the

10  severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at

11  805-06. Plaintiff appealed the final decision of the Commissioner to this Court. (Dkt. # 1.)

## III.    LEGAL STANDARDS

13         Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social

14  security benefits when the ALJ's findings are based on legal error or not supported by substantial

15  evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a

16  general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the

17  ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012)

18  (cited sources omitted). The Court looks to "the record as a whole to determine whether the error

19  alters the outcome of the case." *Id*.

20         "Substantial evidence" is more than a scintilla, less than a preponderance, and is such

21  relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

22  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th

23

---

[2] 20 C.F.R. § 416.924.

1    Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical

2    testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d

3    1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may

4    neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v.*

5    *Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one

6    rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

7                          **IV.    DISCUSSION**

8    **A.    The ALJ Did Not Harmfully Err in Developing the Record**

9    Plaintiff contends the ALJ owed her a heightened duty to develop the record because she

10   was a child and was represented by a non-attorney. (Dkt. # 15 at 4-5.) The Commissioner

11   contends the ALJ had only the ordinary duty to develop the record because Plaintiff's non-

12   attorney representative was eligible for direct payment by the agency, meaning the representative

13   had demonstrated specialized knowledge or experience and was required to participate in

14   continuing education courses. (Dkt. # 20 at 3-4.) Plaintiff argues in reply that the Ninth Circuit

15   has imposed a heightened duty based on whether the representative is an attorney or not, without

16   distinction among non-attorneys. (Dkt. # 21 at 2.)

17   An ALJ always has "a duty to conduct a full and fair hearing." *McLeod v. Astrue*, 640

18   F.3d 881, 885 (9th Cir. 2011). "The ALJ must be 'especially diligent' when the claimant is

19   unrepresented or has only a lay representative[.]" *Id.* (quoting *Tonapetyan v. Halter*, 242 F.3d

20   1144, 1150 (9th Cir. 2001)).

21   Regardless of which level of duty the ALJ had, Plaintiff has not shown that the ALJ did

22   not fully and fairly develop the record. "An ALJ's duty to develop the record further is triggered

23

ORDER - 3

1   only when there is ambiguous evidence or when the record is inadequate to allow for proper

2   evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001).

3          In addressing this assignment of error, Plaintiff makes no specific argument as to what

4   portion of the record was ambiguous or inadequate and fails to explain how any further

5   information might have changed the ALJ's decision. In addressing another assignment of error,

6   Plaintiff contends the ALJ "was not especially diligent in developing the record" because he

7   "shut down" medical expert Daniel Wiseman, M.D., when Dr. Wiseman began discussing a

8   "significant speech delay in the record" at the March 2022 hearing.[3] (Dkt. # 15 at 8.)

9          Dr. Wiseman testified that Plaintiff "had real difficulty in speech at age two and three and

10  four. She had a very limited vocabulary, only a few words and it's only in the last maybe five

11  years that she's had real communicative speech." AR at 895. Because Plaintiff applied for

12  benefits in May 2015, Dr. Wiseman's comments relate little if at all to the period adjudicated by

13  the ALJ. Plaintiff fails to explain how speech difficulty at age four would affect the disability

14  evaluation beginning at age six.[4] Dr. Wiseman's only source of information was the medical

15  record, but Plaintiff points to nothing in the record indicating that speech impairments within the

16  adjudicated period that would have impacted the ALJ's overall disability determination.

17  Accordingly, Plaintiff has not shown the ALJ harmfully erred by failing to develop the record.

18

19  _____

20  [3] On reply, Plaintiff appears to allege a step two error in determining whether a speech delay was a
    medically determinable impairment. (*See* dkt. # 21 at 6.) Because Plaintiff did not raise any step two error
    in the opening brief, the Court declines to address this argument. *See Indep. Towers of Wash. v. Wash.*,
21  350 F.3d 925, 929-30 (9th Cir. 2003) (the Court "will not consider any claims that were not actually
    argued in appellant's opening brief").

22  [4] Although Plaintiff alleged disability beginning in 2011, SSI benefits are only payable after the
    application date. *See* 20 C.F.R. § 416.315 ("SSI benefits can be paid starting with the first day of the
23  month following the month the individual first meets all eligibility requirements for such benefits,
    including having filed an application."); 20 C.F.R. § 416.202 (eligibility requirements include having
    filed an application).

ORDER - 4

1

**B.      The ALJ Did Not Err in Evaluating the Medical Expert's Opinions**

2      At the March 2022 hearing, Dr. Wiseman began his testimony by identifying medically

3  determinable impairments, beginning with diabetes. AR at 894. When he mentioned "a speech

4  delay," the ALJ admonished him that it was "pure speculation" because "speech delay wasn't

5  even alleged." *Id.* at 895. When Dr. Wiseman addressed diabetes, he stated he would "like to

6  speak about diabetes a little bit, before [speaking] about [Plaintiff's] diabetes." *Id.* at 896. After

7  Dr. Wiseman spoke at length about diabetes and his "belief . . . that juvenile diabetes is a

8  devastating chronic disease," the ALJ asked him to focus on his "specific opinion regarding the

9  diabetes with this young lady[.]" *Id.* at 896-98. Dr. Wiseman stated that "this disease has

10  required that her family change their lifestyle tremendously" and noted that two of Plaintiff's

11  siblings also had juvenile diabetes. *Id.* at 898. Dr. Wiseman also noted Plaintiff had been treated

12  for "anxiety and depression." *Id.* at 899.

13      Based on these impairments, Dr. Wiseman opined that, in the six functional domains,[5]

14  Plaintiff had one extreme limitation in health and physical well-being and four other marked

15  limitations. AR at 904; *see also id.* at 815. Dr. Wiseman also noted that "the listings for diabetes

16  . . . do not go beyond age six" but stated that his "opinion about childhood diabetes has always

17  been this is a major disease, no matter what the listings say." *Id.* at 897, 902.

18      The ALJ gave Dr. Wiseman's opinions "very little weight" as inconsistent with the

19  longitudinal medical record and Plaintiff's activities, and because Dr. Wiseman opined on mental

20  listings "outside of his area of expertise in pediatrics." AR at 815. Plaintiff contends the ALJ's

21  reasons were erroneous. (Dkt. # 15 at 8-10.) Plaintiff further contends the ALJ erred by limiting

22

23  [5] A child claimant's impairments functionally equal a listed impairment if the claimant has two "marked" limitations or one "extreme" limitation in the six domains of functioning: acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, caring for oneself, and health and physical well-being. 20 C.F.R. § 416.926a(b)(1).

ORDER - 5

1  discussion of speech delay and by stating that Dr. Wiseman "says this same exact thing every

2  time" in diabetes cases. (*Id.* at 7 (quoting AR at 906).) As discussed above, Plaintiff has not

3  provided evidence that further discussion of speech delay would have altered the ALJ's disability

4  determination, and thus, any error was harmless. Plaintiff's remaining arguments are addressed

5  in turn.

6              1.       *The ALJ Provided Valid Reasons to Discount Dr. Wiseman's Testimony*

7         Under regulations applicable to claims filed before 2017, Dr. Wiseman was considered a

8  non-examining physician. *See* 20 C.F.R. § 416.927. "The weight afforded a non-examining

9  physician's testimony depends on the degree to which he provides supporting explanations for

10  his opinions." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (internal alterations

11  omitted). An ALJ "may reject the opinion of a non-examining physician by reference to specific

12  evidence in the medical record." *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998) (citing

13  *Gomez v. Chater*, 74 F.3d 967, 972 (9th Cir. 1996)).

14         The ALJ found Dr. Wiseman's opinions of diabetes-related limitations inconsistent with

15  the longitudinal endocrinology evidence showing Plaintiff's "diabetes remains stable and well

16  controlled with conservative treatment[.]" AR at 815. Plaintiff argues the ALJ erred because "Dr.

17  Wiseman was far more qualified" than the ALJ to evaluate the endocrinology evidence. (Dkt.

18  # 15 at 10.) While an ALJ is not a medical expert, it is expressly the ALJ's role to review the

19  medical evidence and determine whether to accept or reject medical opinions. *See Carmickle v.*

20  *Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008) ("The ALJ is responsible for

21  resolving conflicts in the medical record."); 20 C.F.R. § 416.927 ("[W]e will evaluate every

22  medical opinion we receive."). Plaintiff has not shown or even argued that the ALJ's finding was

23  not supported by substantial evidence or was unreasonable, and thus, has failed to show that the

ORDER - 6

1  ALJ's reasoning was erroneous. The ALJ cited records showing, for example, that "[o]verall

2  [Plaintiff] is doing fairly well" (AR at 529, 536, 543, 548), which the ALJ reasonably found

3  inconsistent with Dr. Wiseman's testimony of extreme disabling limitations. *See Thomas*, 278

4  F.3d at 954 ("Where the evidence is susceptible to more than one rational interpretation, one of

5  which supports the ALJ's decision, the ALJ's conclusion must be upheld.").

6       The Court concludes the ALJ did not err in rejecting Dr. Wiseman's opinions of extreme

7  limitations as inconsistent with the medical evidence. *See Ford v. Saul*, 950 F.3d 1141, 1156 (9th

8  Cir. 2020) (inconsistency with objective evidence in the medical record is a valid reason for

9  rejecting a medical opinion).

10       Plaintiff argues the ALJ erred by rejecting Dr. Wiseman's opinions regarding mental

11  listings as outside his area of expertise because Dr. Wiseman "had an M.D., and so was

12  authorized to make medical determinations regarding mental as well as physical questions."

13  (Dkt. # 15 at 9.) A medical source's specialty is a valid consideration. *See* 20 C.F.R.

14  § 416.927(c)(5) (noting that more weight is generally given to opinion of a "specialist about

15  medical issues related to his or her area of specialty" than to other opinions). Plaintiff cites

16  *Sprague v. Bowen*, where the Ninth Circuit held that an ALJ erred in rejecting a doctor's opinion

17  of mental impairments intertwined with physical impairments because the doctor was not a

18  psychiatrist. 812 F.2d 1226, 1232 (9th Cir. 1987). In that case, however, the doctor was a treating

19  physician who had treated the claimant specifically for mental impairments. *See also Lester v.*

20  *Chater*, 81 F.3d 821, 833 (9th Cir. 1995) (reversing ALJ because, "[l]ike the treating physician in

21  *Sprague*, Dr. Kho provided treatment for the claimant's psychiatric impairment, including the

22  prescription of psychotropic medication."). Plaintiff's situation is distinguishable from *Sprague*

23  because Dr. Wiseman did not treat Plaintiff for mental impairments. Moreover, the ALJ provided

ORDER - 7

1   additional reasons to discount his opinions. The ALJ referred specifically, not only to Dr.

2   Wiseman's specialty, but to evidence that Plaintiff's "anxiety was stable"; that she was

3   successful in school; and that she was able to travel internationally and provide care for her

4   mother. AR at 810, 813, 815.

5         Plaintiff disputes each of these reasons. First, she argues she was not successful in school

6   because she was reading at a third-grade level in fifth grade, and because Dr. Wiseman opined

7   that, as a 13-year-old, she was "still behaving like a seven-, eight- or nine-year-old." AR at 902;

8   *see* dkt. # 15 at 9. The ALJ noted Plaintiff has not failed any grades, and the medical records

9   document happy and/or normal mood. AR at 809-12. Moreover, Plaintiff does not contest that

10   her anxiety was stable, or that she was able to live abroad for months with her family. Plaintiff

11   objects that the record does not detail what help she provided her mother, but any ability to help

12   supports the ALJ's interpretation of the record. *See id.* at 1471 (Plaintiff "had to care for Mom

13   which was very scary . . . as she feared she would not recover."). Plaintiff argues she was not

14   successful in school because, when asked at the hearing if she had "special classes at school,"

15   she replied, "No, but in elementary school I think so." *Id.* at 870. This ambivalent statement is

16   unsupported, as Plaintiff points to no evidence in the record showing that she received special

17   education in elementary school. A Disability Report filled out in third grade stated Plaintiff was

18   not in special education. *Id.* at 349.

19         It is the ALJ's responsibility to sort through competing evidence. The ALJ did so here,

20   and his findings that Plaintiff was successful at school and able to travel abroad and help her

21   mother are supported by substantial evidence and constitute legally sufficient reasons to discount

22   Dr. Wiseman's testimony that Plaintiff had disabling functional limitations. *See Ghanim v.*

23

1    *Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) ("[C]onflict with [claimant's] daily activities . . .

2    may justify rejecting a treating provider's opinion.").

3                    2.       *The ALJ Did Not Show Harmful Bias against Dr. Wiseman*

4           After Dr. Wiseman testified, the ALJ gave Plaintiff's representative an opportunity to

5    question him. AR at 904. The representative stated he "ha[d] no questions for the medical

6    expert." *Id*. After Dr. Wiseman was released from the hearing and all witnesses had completed

7    their testimony, the ALJ stated:

8           The doctor is not the last word on this. I am and I review records extremely carefully
            to see, to corroborate. There were many things that, frankly, in the interest of time,
9           I didn't feel the need to go on about with him, frankly. I've used him or been
            associated with him or had him as an ME many times and in diabetes cases and he
10          says this same exact thing every time and if you don't rei[n] him in, we'll be here
            for two hours, because he'll start going off into his – well anyway.

11   *Id.* at 906.

12          Plaintiff contends the "ALJ cannot reasonably be trusted to have evaluated [Dr.

13   Wiseman's] testimony fairly when the ALJ believed that 'in diabetes cases he says this same

14   thing every time.'" (Dkt. # 21 at 6.) Plaintiff contends the ALJ "contaminated the record" by

15   mentioning other cases, and showed "prejudice" against Dr. Wiseman. (*Id*.)

16          Plaintiff fails to explain how the ALJ's generic mention of other cases, with no specific

17   details or any comparison to Plaintiff's case, contaminated the record or had any effect on the

18   disability determination. Because Dr. Wiseman referred to his beliefs about childhood diabetes in

19   general, the ALJ's comments were not inappropriate. *See* AR at 897 (Dr. Wiseman testified, "I

20   have been under the belief all of my career . . . that juvenile diabetes is a devastating chronic

21   disease[.]").

22          ALJs are "presumed to be unbiased. This presumption can be rebutted by a showing of

23   conflict of interest or some other specific reason for disqualification." *Rollins v. Massanari*, 261

ORDER - 9

1    F.3d 853, 857-58 (9th Cir. 2001) (quoting *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir.

2    1999)). "But 'expressions of impatience, dissatisfaction, annoyance, and even anger, that are

3    within the bounds of what imperfect men and women . . . sometimes display' do not establish

4    bias.'" *Id.* (quoting *Liteky v. United States*, 510 U.S. 540, 555-56 (1994)). Even "sarcasm or

5    impatience," which is more than the ALJ here displayed, is not sufficient to show bias. *Id*. The

6    ALJ's comments about Dr. Wiseman do not show bias at a level comparable to a conflict of

7    interest.

8         The Court concludes the ALJ did not display harmful bias against Dr. Wiseman. Because

9    the ALJ provided sufficient reasons to discount Dr. Wiseman's opinions and was not disqualified

10   due to bias, Plaintiff has not shown harmful error in the ALJ's assessment of the medical

11   evidence.

12                              **V.    CONCLUSION**

13        For the foregoing reasons, the Commissioner's final decision is **AFFIRMED**, and this

14   case is **DISMISSED** with prejudice.

15        Dated this 12th day of May, 2023.

16

17                                        MICHELLE L. PETERSON
                                          United States Magistrate Judge

18

19

20

21

22

23

ORDER - 10